**HOWARD v. SMITH et al.**

**No. 1677.**

United States District Court
W. D. Missouri, W. D.

May 25, 1950.

———◆———

Roy K. Dietrich, Kansas City, Mo., for plaintiff.

George B. Reinhardt, Kansas City, Mo., for defendants.

REEVES, Chief Judge.

Plaintiff has sued defendant on two counts. On each count he seeks to have set aside settlement agreements between him and the defendant Damon Smith, and on each count he asks for an accounting of profits in the operation of a farm known as the Eagle Bend farm, consisting of about 550 acres, and located in Marion County in the State of Indiana. The crop years involved were 1937 and 1938.

The first agreement was entered into between the plaintiff and the defendant, Damon Smith, on February 8, 1937. Prior to that time the plaintiff had been employed by the said Smith on one of his farms, viz: the Eagle Bend farm. The contract is long and it is needless to set it out. In substance, the plaintiff, after the deduction of certain expenses, was to receive one-third of the crops produced on the said Eagle Bend farm. Apparently the farm was very fertile and the crops were large. At the end of the season the parties entered into a settlement agreement of all their transactions up until March 1, 1938. By this settlement agreement the plaintiff agreed to accept one "Ford De-Luxe Coupe as full settlement of all monies due him from Damon Smith and Eagle Bend Farm, and all connected with Eagle Bend Farm and Damon Smith from any and all sources whatsoever, as full payment for all monies due him from this connection prior to March 1, 1938."

Concurrently with this agreement or settlement, the said Smith, as party of the first part, entered into a second agreement with plaintiff as party of the second part. Eagle Bend farm was again leased to plaintiff "for season from March 1, 1938 to March 1, 1939." The agreement was substantially the same as that in the first contract, save only that the plaintiff was to share the livestock precisely as in the case of the crops. Note the following: "One third of all calves born during the period of this contract, including the sixty head now on hand, to be property of party of the second part after he has paid one third of all feed purchased for these calves, provided party of the second part shall have furnished one third of the feed for the cows, and all labor connected with the care of both, and further provided that party of the second part shall have remained on the job, performing such duties up until March 1, 1939."

For the settlement of January 21, 1939, the plaintiff received: " * * * One Hundred Fifty Five ($155) Dollars in full

and complete settlement of any and all claims of any character or nature of any kind whatsoever I, Alvin Howard, may now have or ever have had from the beginning of time to date which includes all crops and livestock and everything else raised on Eagle Bend farm with the exception of my proportionate share of all monies owing to us from the United States Government growing out of transactions on Eagle Bend farm." This was followed by an agreement on the part of the plaintiff to vacate and remove from the farm "on or before the 24th day of January, 1939."

These settlements, it is alleged, were obtained by co-defendant, Damon Smith, upon representations to plaintiff that no profits or money had been made on the farm, but, on the contrary, both the parties had sustained losses. Accepting these representations, as the plaintiff claimed, he made the settlements mentioned. Subsequently it developed that the representations inducing the settlement agreement were not in accordance with the facts, and the plaintiff instituted this action to annul the settlement agreements and for an accounting of profits.

The defendant, Damon Smith, denies any deception, and claims, both in his answer and the evidence, that, instead of making money he had lost money in the transactions.

The evidence tended to show that during the year 1937 the operation of the Eagle Bend farm resulted in large productions of wheat, alfalfa, and other stock feed, and that, according to the evidence, the plaintiff's one-third, after deducting credits, amounted to or was reasonably valued at $2415.25. The testimony of co-defendant, Damon Smith, tended to show that in the first place Edith Smith was not concerned in the transaction and was not properly joined, and that the action should be dismissed as to her, and, in the second place, during the first year as well as the second year, he was preoccupied with a correspondence school in Chicago, with certain oil interests, and, in addition he was operating several other farms. Apparently he did not keep a record of his transactions on Eagle Bend farm separate and apart from his other transactions. It is true he testified that he had expended large sums of money in the way of capital investment on Eagle Bend farm and had invested heavily in livestock during both the years 1937 and 1938. He did not keep a record of profits and losses in respect of his transactions with the plaintiff. The plaintiff's testimony was positive, and it was the agreement between them that the defendant Damon Smith would keep books on the farm operations. This is confirmed by reports entitled "Daily Report Farm Manager." These were voluminous and undertook to acquaint the defendant in detail with all the farm operations. Apparently these contemplated that the defendant would keep records of expenditures, including profits and losses on the farm operations. Capital improvements, the investment in livestock, were of no concern to the plaintiff.

In the trial of the case the defendant did not produce records showing the results of the farm operations but offered testimony to the effect that some of the crops had deteriorated and become worthless. This was rebutted by the plaintiff.

The evidence for the second year ran approximately the same. The plaintiff produced evidence showing that the net to him, including the interest in the cattle, as well as the crops, amounted to, or should be valued at $4077.50. The evidence of the plaintiff supported his claim as to values and profits but again the defendant offered no testimony in support of his contention that there was a loss rather than profit. Again, the defendant apparently computed his losses upon the basis of what might be determined capital expense and losses sustained in relation to his livestock investments. There was an arbitration clause in both contracts, but apparently neither of the parties has elected to stand on that arbitration clause.

Upon the issues made up and as tried, the preponderance of the evidence favored the plaintiff, as above stated, and established his right of recovery of the amounts above set out, namely, $2415.25 as due him on March 1, 1938, and upon that sum he should have interest at 6%

from said date; and $4077.50 as being due on January 21, 1939, with interest at 6% from said date.

 It cannot be said that the defendant deliberately and intentionally and with a dishonest purpose induced the plaintiff to sign the settlement agreements mentioned but he did so rather recklessly. He was engaged in sundry business enterprises, and failed to take into account his capital investments or improvements on his farm, and undertook to offset these against the crop and livestock operations in which plaintiff had an interest, and wrongfully reasoned that he had sustained losses rather than net profits. He so advised the plaintiff, and the plaintiff relied upon such representations thus unadvisedly made. He is, of course, entitled to have both settlement agreements annulled, and, as stated, a judgment in accordance with the evidence.